(73 South. 345)

No. 21508.

MORRIS v. ST. BERNARD CYPRESS CO.

(Nov. 13, 1916. Rehearing Denied Dec. 11, 1916.)

*(Syllabus by the Court.)*

On Motion to Fix by Preference.

1. CONSTITUTIONAL LAW ☞191. 249—STATUTES ☞117(2) — TRIAL ☞13(1) — EQUAL PROTECTION OF LAWS—EX POST FACTO LAW.

Act No. 17 of 1916, p. 47, is not unconstitutional or inoperative.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 534, 710; Dec. Dig. ☞ 191, 249; Statutes, Cent. Dig. § 155; Dec. Dig. ☞117(2); Trial, Cent. Dig. § 32; Dec. Dig. ☞13(1).]

On Exceptions of No Cause of Action.

2. PLEADING ☞408—PETITION—SUFFICIENCY.

A cause of action is shown where any allegation of the petition, taken together with evidence unobjected to on the trial, shows a cause of action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1362, 1366; Dec. Dig. ☞408.]

On the Merits.

3. MASTER AND SERVANT ☞153(1)—INJURIES TO SERVANT—DUTY TO INSTRUCT.

An employer is at fault and is responsible in damages to an employé who is put to work by his employer in a dangerous position, when the latter is informed by the employé that he is ignorant of the duties of said work, and where he (the employer) fails to give any instructions whatever as to the dangers of the position or the proper way in which to do the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 314; Dec. Dig. ☞ 153(1).]

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Action by Joseph Morris against the St. Bernard Cypress Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Foster, Milling, Saal & Milling, of Franklin, for appellant. A. A. Calongne and Woodville & Woodville, all of New Orleans, for appellee.

On Motion to Fix by Preference.

SOMMERVILLE, J. This is a personal injury suit, which, on motion by plaintiff, was fixed and heard by preference. Defendant and appellant moves that the order fixing the case should be recalled on the ground that Act No. 17 of 1916, p. 47, under which the case was fixed by preference, is inoperative, invalid, and unconstitutional for several reasons. Some of these reasons are disposed of adversely to the defendant in the case of Mrs. Janie King v. New Orleans Railway & Light Co., No. 21469, 140 La. 843, 74 South. 168, on the docket, this day decided; and they will not be further noticed.

[1] The first objection to the act of the Legislature is that, while the act is entitled "To provide that all suits for damages arising ex delicto shall be tried by preference," the act itself does not declare that such actions are preference suits, or that they shall be tried by preference. The act directs that such actions shall be placed upon the preference dockets of the courts of the state, and tried along with other preference cases; and the object is clearly embraced in the title.

The next objection is that the act is unconstitutional because it gives preference to certain persons holding a certain character of actions for damages, when it does not embrace all persons who may have actions for damages; and it gives a preference to ex delicto damage cases over the general business and the general classes of cases before the court. Cases sounding in damages arising ex delicto are in a class to themselves, and they embrace all suits on such actions. All litigants belonging to that class have the equal protection of the law; and there is no discrimination against persons outside of that class.

The next objection is that the act is ex post facto, and therefore unconstitutional, as it includes this, and other cases, which were filed in the court before the passage of said

act. The act is not a criminal statute, and, besides, is one affecting the administration of the business of the courts of the state, and does not deprive appellant of any vested rights.

The motion to recall the order fixing the case by preference is denied.

### On Exceptions of No Cause of Action.

[2] Defendant has filed two exceptions in this court on the ground that plaintiff's petition discloses no cause of action.

Plaintiff alleges in his petition that he was employed by the defendant company as a night watchman on what is called a sawmill skidder; and that while he was thus engaged he was removed by his superior and put to work on a logging train as a fireman and to make couplings; and that he was unfamiliar with this kind of work, and was given no instructions therein or warnings as to the dangers thereof; and that he was injured in the manner set forth in the petition while thus engaged. The evidence was to the effect that there is danger in coupling cars, and that there is a safe and unsafe way to do such work. Defendant's foreman testified in part:

"We all know that [that there is danger]. But what more can you tell a man than to be careful?" "A man could get hurt at it any time. I could. Anybody else could." "A man can always keep from getting hurt at coupling, or braking, cars. I know that because I did it myself."

This same witness testified, with reference to the instructions given by him to the plaintiff:

"This negro, Harry Williams [the brakeman] took sick, and I had nobody else to put on the locomotive, and I asked Joe Morris [the plaintiff] would he go, and he said, 'Yes,' and I told him to be careful—to go ahead. That was all the instructions I gave him." "He was, I knew, familiar with the work. I must say that I had never seen him do the work, but he had seen it, during the whole time he was there [some two months, during which time plaintiff was serving as night watchman]."

This evidence was given by defendant itself, and, of course, was unobjected to. The

evidence further shows that plaintiff was an ordinary colored laborer, employed by the defendant as an all-around man, and that he had never acted as a brakeman on a train before to the knowledge of defendant.

Defendant put plaintiff to work in a dangerous place, with dangerous appliances, and without any instructions whatever. The petition may be faulty, but, when taken together with the evidence taken on the trial of the case, and unobjected to, it discloses a cause of action. The exceptions are overruled.

### On the Merits.

[3] The petition of plaintiff contains allegations to the effect that the engine attached to the train was being operated by the fireman, instead of the engineer; that the said fireman was unskilled and unequipped in training for said work; that the coupling pin and drawheads on the cars which petitioner was proceeding to couple were defective, old, and worn-out; that the drawhead of one was higher than the one on the other car, and they did not fit properly, the front car being a tank car and the other a flat car loaded with logs; that the fireman in charge of the locomotive, without any warning to petitioner, suddenly bumped the cars and their couplings together, when petitioner was trying to couple them; and that his left hand was crushed, and he was seriously injured; that the cars, track, appliances, and roadbed were owned by the defendant; and he asked judgment in damages for $4,825. There was judgment in favor of plaintiff and against defendant in the sum of $1,025, from which judgment the defendant has appealed. Petitioner has answered the appeal, and asks that the damages be increased to the amount prayed for in his petition.

The evidence is clear to the effect that the coupling of cars is dangerous, and particularly so to an uninstructed person. It was therefore negligence on the part of the de-

fendant to have assigned plaintiff, an ignorant and uninstructed laborer, to couple cars without giving instructions of any kind, or warnings, other than "to be careful."

Plaintiff was employed by the defendant to serve as an all-around man, when he was ordered by his superior to serve as a brakeman on defendant's train. Defendant knew plaintiff to be an ordinary laborer. Its engineer, the superior of plaintiff, was informed by the latter that he had not served as a brakeman before, and that he had not coupled cars. It was clearly the duty of the defendant to have instructed the plaintiff in the performance of his new duties; and, not having done so, defendant was at fault and guilty of neglect towards the plaintiff.

The record does not disclose the exact duties of a brakeman on a train, where automatic couplers are used. Automatic couplers are supposed to couple themselves, and the going of the brakeman between the cars is unnecessary. Usually there is a lever on the side of the car, which is connected with the automatic coupler for certain purposes. But, according to the testimony of defendant's foreman, the coupler under consideration was a combination coupler—it was automatic with a link and pin attached. If the coupling is out of order, then the brakeman might have to go between the cars to adjust it. And the couplings involved in this particular case were, as is shown by the photographs produced by the defendant, out of line. The engineer testified that the couplings were in good order. If this was so they should have coupled when the cars came together. The evidence shows that not only were the cars out of line, but that they did not couple when the cars came together. Clearly the couplings were not in perfect order. When asked by counsel for the defendant "whether those cars in that position would have coupled, if bumped together," the engineer answered:

"Yes, sir. * * * Q. Without any one touching them at all? A. Not unless—it may be necessary to shove them over in line, one way or the other. Q. If they were out of line horizontally, how would the coupling be made? A. Why it would be necessary to shove them over in line, either with your hand, or with your foot. * * * Q. When is that shoving over done? Before they meet? A. Just when you are going to make your coupling; yes, sir. Q. In other words, the stationary drawhead is pushed over so as to receive them other—is that the idea? A. The knuckle is pulled over. * * * Q. You do that before the moving car reaches it? A. Yes, sure. It is necessary to do that. Q. Is it necessary to put your hand in position where it may be mashed, in order to shove the drawhead over? A. No, sir."

It was necessary to shove over one of the couplings, either with the hand or with the foot. The engineer says the "knuckle is pulled over." Plaintiff was uninstructed as to how to proceed under the circumstances. He doubtless would have pulled the knuckle over, if he had been instructed that that was the proper way to proceed; but he was not instructed; and, by attempting to adjust what he, properly or improperly, calls a link and pin, which was defective in some way, his hand was mashed between the couplings on his first attempt to couple cars.

This accident might have been avoided had defendant given plaintiff a safe place in which to work and safe appliances with which to work, and then have given him proper instructions as to how the work should be done. Having failed to do these things, defendant is responsible for the injury to plaintiff.

Plaintiff, in answering the appeal, asks that he be awarded more than the judgment appealed from. But the trial judge saw plaintiff, and he was able to estimate the actual damages suffered by him, and he heard all the witnesses, and he has fixed the damages at $1,025. This judgment will not be disturbed. Affirmed.